UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDWARD ROQUE | : | CRIMINAL No. 3:02CR353(AWT) |
| V. | : | CIVIL No. 3:04CV1654(AWT) |
| UNITED STATES OF AMERICA | : | December 6, 2004 |

GOVERNMENT'S RESPONSE TO ROQUE'S PETITION UNDER 28 USC § 2255
TO VACATE, SET ASIDE, OR CORRECT SENTENCE

The Government submits the following response to defendant-petitioner Edward Roque's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The petitioner was sentenced to 210 months' incarceration and 5 years' supervised release after pleading guilty to Count One of the Indictment, which charged him with being a previously convicted felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The petitioner did not appeal his conviction, but now moves on collateral review to vacate his sentence. He makes five claims: (1) he was denied effective assistance of counsel because his trial counsel did not adequately investigate his case and improperly pressured him to plead guilty; (2) this Court improperly relied on a statement made by the petitioner at a March 26, 2003 hearing on a motion for substitute counsel; (3) one of the petitioner's prior convictions was improperly counted for criminal history points; (4) the Court improperly applied a four-level guidelines enhancement under U.S.S.G. § 2K2.1(b)(5); and (5) the petitioner was not an armed career criminal under 18 U.S.C. § 924(e) because one of his qualifying convictions was a property crime that did not involve violence to another person. For the reasons stated below, the petitioner's motion is without merit and should be denied.

**I.   FACTS**

The petitioner was arrested on October 25, 2002 and indicted on December 10, 2003 for one

count of possession of a firearm by a convicted felon, and one count of possession of ammunition by a convicted felon, both in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Specifically, Count One of the Indictment charged:

> On or about October 25, 2002, at Bridgeport, in the District of Connecticut, **EDWARD ROQUE**, the defendant herein, having been convicted in Massachusetts of a crime punishable by imprisonment for a term exceeding one year, that is Assault and Battery with a Dangerous Weapon, in violation of Massachusetts General Laws, Chapter 265, Section 15A(b), on November 1, 1994, did knowingly possess a firearm in and affecting commerce, that is, a Colt .25 caliber handgun, Serial Number 0D05917, which had been transported in interstate or foreign commerce.

Count Two of the Indictment set forth similar allegations, but charged the petitioner with knowingly possessing one box of American Eagle .25 caliber bullets.

The petitioner was presented and arraigned on December 19, 2002, and jury selection was scheduled for February 14, 2003. The petitioner filed motions to continue jury selection, which were granted and, on March 26, 2003, filed a <u>pro se</u> motion for substitute counsel. At the same time, his counsel filed a motion to withdraw. On April 14, 2003, the Court granted defense counsel's motion to withdraw and appointed new counsel to represent the petitioner. Additional continuances of jury selection were granted, and final jury selection was set for August 15, 2003. On July 7, 2003, the Government filed a notice that the sentencing scheme set forth in 18 U.S.C. § 924(e) would apply to the petitioner if he was convicted of either count in the Indictment because he had been previously convicted of at least three felony offenses which would be considered violent felonies under § 924(e). Specifically, the Government listed seven qualifying convictions: Breaking and Entering A Railroad Car on March 2, 1995; Possession of Burglarious Tools on March 2, 1995; Assault and Battery by Means of a Dangerous Weapon on November 1, 1994; Breaking and Entering at Night with the Intent to Commit a Felony on June 24, 1991; Possession of Burglarious Tools on June 24, 1991; Assault and Battery of a Police Officer on June 24, 1991; and Assault and Battery on a

Correctional Officer on March 7, 1989.

.       On August 13, 2003, the petitioner changed his plea to guilty as to Count One. The Court engaged the petitioner in a lengthy plea canvass in compliance with Fed. R. Crim. P. 11. In particular, the Court advised the petitioner of his constitutional rights, the nature of the charges against him, and the potential penalties he faced. See T.8/13/03 at 3-4. The Court placed the petitioner under oath and asked him several questions to ascertain that he was competent to enter a guilty plea. See id. at 5. The Court then asked the petitioner and his counsel whether they had had ample opportunity to discuss the case with each other and, in particular, the operation of the 15 year mandatory minimum penalty and the Sentencing Guidelines. See id. at 8-10. The Court specifically inquired of the petitioner as to whether he had received the Government's notice indicating that, upon conviction of either count of the Indictment, the enhanced penalties under 18 U.S.C. § 924(e) would apply. See id. at 10.

Next, the Court reviewed the petitioner's various trial rights. The Court discussed the Government's burden of proof and the fact that a jury could render a not-guilty verdict despite everyone's conviction that the petitioner was, in fact, guilty as charged. See T.8/13/03 at 10. The Court explained the petitioner's presumption of innocence and the fact that, at a trial, he could cross-examine the Government's witnesses, object to the Government's evidence, offer evidence in his own defense, and compel his own witnesses to testify. See id. at 11-12. The Court further explained that the petitioner could not be compelled to testify and that the jury could not hold it against him if he chose not to testify. See id. at 12.

The Court then reviewed specific portions of the written plea agreement, including the written stipulation of facts in which the petitioner admitted both to having knowing possessed the firearm at issue on October 25, 2002 and to having previously been convicted of a sufficient number

of felony offenses to qualify him as an armed career criminal under 18 U.S.C. § 924(e). See T.8/13/03 at 14-15. The Court specifically reminded the petitioner that his admission regarding these convictions subjected him to the 15 year mandatory minimum penalty provided for by § 924(e). See id. at 15. The Court also reviewed with the petitioner the provision in which he waived his right to appeal or collaterally attack his conviction and sentence provided that his sentence did not exceed 210 months' incarceration. See id. at 16.

The Government then reviewed, in detail, all of the provisions of the plea agreement. See T.8/13/03 at 17-20. In particular, the Government read the written stipulation:

> On October 25, 2002, the defendant, Edward Roque, while in the vicinity of East Main and Berkshire Streets, in Bridgeport, Connecticut, at approximately 6:15 p.m., knowingly possessed one Colt .25 caliber handgun, Serial Number 0D05917. Prior to October 25, 2002, the defendant had been convicted of Breaking and Entering A Railroad Car, Possession of Burglarious Tools, Assault and Battery by Means of a Dangerous Weapon, Breaking and Entering at Night with the Intent to Commit a Felony, Assault and Battery of a Police Officer, and Assault and Battery on a Correctional Officer, all felony offenses in the state of Massachusetts. Also prior to October 25, 2002, the subject firearm had been transported in or affected interstate commerce.

Id. at 18. The Government reviewed the guideline stipulation, under which the parties had agreed that the effective guideline range, based on an offense level of 30 and a Criminal History Category VI, was 180 to 210 months. See id. at 19. Included in this stipulation was the Government's agreement to recommend a three point reduction for acceptance of responsibility despite the fact that the petitioner had decided to plead guilty on the eve of jury selection. See id. at 18. The Government also referenced the appeal waiver section and explained that, by virtue of his guilty plea and his execution of the written plea agreement, the petitioner was waiving his rights to appeal and collaterally attack both his sentence and his conviction. See id. at 19.

The petitioner indicated that the Government's explanation of the plea agreement was accurate and reminded the Court that the Government, in the agreement, had promised to recommend

the bottom of the stipulated guideline range at sentencing. See T.8/13/03 at 20. The petitioner further indicated that he had entered into the agreement and waived his appellate rights knowingly and voluntarily, and based only on the promises set forth in the written agreement. See id. at 21.

After the Court reviewed the maximum penalties and the operation of the Sentencing Guidelines, it advised the petitioner that he had no right to withdraw his guilty plea if he was unhappy with the Court's sentence or its determination of the applicable guideline calculations. See T.8/13/03 at 21-24. More specifically, the Court advised the petitioner that it was not bound by the stipulations contained in the plea agreement or any recommendations made by counsel as to the appropriate sentencing range. See id. at 23-24.

The Court then informed the petitioner of the specific elements of the offense of conviction and advised him that each element had to be proven beyond a reasonable doubt to the satisfaction of a jury. See T.8/13/03 at 25-26. The Court further informed the petitioner that, in order to be subject to the mandatory minimum 15 year penalty, the Government would have to establish beyond a reasonable doubt to the jury that he had sustained the convictions listed in the factual stipulation section of the plea agreement. See id. at 26.

At that point, the petitioner indicated, in his own words, what he had done to make him guilty of the offense set forth in Count One of the Indictment: "I recognize that on October 25, I did possess the firearm and that prior to this possession, on this 25th day of October, I was aware that I was a convicted felon. And I had prior convictions." T.8/13/03 at 27. In response to the Court's inquiry as to whether he knowingly possessed the firearm, the petitioner stated, "Yes, I did, Your Honor." Id.

The Government then indicated its factual basis for the plea:

> Your honor, if this case had gone to trial as scheduled on August 18, this year, the

>government would have presented several witnesses, including Lydia and Eddy Ramirez and Bridgeport Police Sergeants Burns and Str[aubel]. Through additional witnesses and those witnesses, the government would establish that at approximately 6:15 October [25] 2002, near the intersection of East Main and Berkshire Streets in Bridgeport, the defendant, Mr. Roque, came to what has been described as a garage rented by Mr. and Mrs. Ramirez with a firearm threatening Mr. and Mrs. Ramirez with the firearm. Ms. Ramirez then got into her vehicle to call the police. She did connect through to 911 complaining of a man with a gun, at which point Mr. Roque came to the window of the car, threatened her with some [expletives] and insisted that she hang up the phone, which she did. She had three children in the car at the time, oldest child was ten years old. And all three children – she was obviously worried about her children, so she fled the garage in her car.
>
>The police did arrive shortly thereafter and Sergeant Burns and Sergeant [Straubel] were directed to an individual with a gun, which was Mr. Roque. They approached Mr. Roque and asked him to drop the gun. At that point, Mr. Roque said, "No, no" and reached for his waistband, at which time Sergeant [Straubel] saw what he believed to be a gun and Mr. Roque walked backwards and then ran. A chase – there was a foot chase which lasted approximately three blocks and he was apprehended at the end of that chase. During the chase, he was seen by Sergeant [Straubel] discarding the firearm. The firearm was found underneath a car, photographed in place, those photographs would be offered as evidence.
>
>In addition to the testimony of the witnesses and to the photographs and to the 911 call, the government would offer a representative from Colt Manufacturing Company to testify about the gun and to state the fact that the gun was shipped from Connecticut to New Rochelle, New York prior to the October 25, 2002 incident.
>
>The government would be prepared to present testimony and documentary evidence from the State of Massachusetts Judicial Department establishing that the defendant had been convicted of several felony convictions prior to October 25, 2002.

T.8/13/03 at 28-29.

The Court addressed the petitioner and asked him whether he agreed "with the prosecutor's summary of what you did?" T.8/13/03 at 30. The petitioner responded, "I do, Your Honor." Id. The Court again asked, "Is there anything the prosecutor said with which you disagree?" Id. The petitioner responded, "No, Your Honor." Id. The petitioner then entered his plea of guilty, and the Court accepted the plea. See id. at 30-31.

At sentencing, on October 31, 2003, the Court agreed with the guideline calculation set forth in the plea agreement and concluded that the petitioner faced a guideline range of 180 to 210

months' incarceration. See T.10/31/03 at 7. The petitioner argued in favor of a sentence at the bottom of the range, and the Government, based on its promise in the written plea agreement, supported this argument. See id. at 7-11. The Court acknowledged the petitioner's position, but sentenced him at the top of the range based on his extensive history of violence and assaultive behavior:

> Unfortunately, I have concluded that you have no concern for the safety of others and no respect for their property and no respect for the law. I have also concluded that not only do you lack respect for law enforcement officers but that you are not even deterred from misconduct by virtue of their presence on the scene. You have assaulted a correctional officer. You have a pattern of assaulting police officers. You have an extensive history of criminal conduct. While your lawyer points out that use of drugs has been a contributing factor in your criminal history, I must say that I have numerous defendants who have drug problems who have not assaulted anyone. And I cannot think of more than one or two who have drug problems who have assaulted a police officer in connection with any offense. And I can't think of any that have a pattern of assault on law enforcement officers the way that you do. All of this leads me to conclude that you are a serious threat to the community and that society needs to be protected from you as long as possible, and I have no confidence that you can be deterred from committing crimes in the future.

T.10/31/03 at 15-16.

On or about October 1, 2004, the petitioner filed his petition for relief under section 2255.[1] The Court then ordered the Government to show cause why the requested relief should not be granted.

## II. DISCUSSION

### A. Governing Legal Principles

---

[1] On November 13, 2003, the petitioner sent a pro se communication to the Court, which the Court filed on December 3, 2003. In that letter, which did not purport to be a § 2255 petition, the petitioner raised several challenges to his underlying conviction. On or about February 26, 2004, the Government submitted a response to the petitioner's letter indicating, among other things, that the letter may or may not have been an attempt to file a § 2255 petition. On August 24, 2004, the petitioner submitted a pro se request with the court to withdraw the letter and not have it construed as a § 2255 petition. On September 7, 2004, the Court granted the petitioner's request and issued a written order which held, inter alia, that the November 13, 2003 pro se letter would not be treated as a § 2255 petition.

The principles governing a claim under 28 U.S.C. § 2255 are well-established: "[W]e must bear in mind that not 'every asserted error of law can be raised on a § 2255 motion.'" Napoli v. United States, 32 F.3d 31, 35 (2d Cir. 1994) (quoting Davis v. United States, 417 U.S. 333, 346 (1974)). "The grounds provided in section 2255 for collateral attack on a final judgment in a federal criminal case are narrowly limited, and it has 'long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment.'" Napoli, 32 F.3d at 35 (quoting United States v. Addonizio, 442 U.S. 178, 184 (1979)). "As a general rule, 'relief is available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" Napoli, 32 F.3d at 35 (quoting Hardy v. United States, 878 F.2d 94, 97 (2d Cir. 1989)) (internal quotations and citations omitted). Constitutional errors will not be corrected through a writ of habeas corpus unless they have had a "substantial and injurious effect," that is, unless they have resulted in "actual prejudice." Brecht v. Abrahamson, 507 U.S. 619, 623, 637-38 (1993); see also Underwood v. United States, 166 F.3d 84, 87 (2d Cir. 1999) (applying Brecht to section 2255 petition).

Furthermore, a habeas petitioner must not have procedurally defaulted his claims by failing to raise them at trial and on direct appeal. For a court to review procedurally defaulted claims, the petitioner must show both "cause" for the default of each claim and "prejudice" that resulted from the alleged violation. See Ciak v. United States, 59 F.3d 296, 302 (2d Cir. 1995) (quoting Wainwright v. Sykes, 433 U.S. 72, 87 (1977)). A writ of habeas corpus will not be allowed to do service for an appeal. See Reed v. Farley, 512 U.S. 339, 354 (1994) ("Where the petitioner–whether a state or federal prisoner–failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice from the alleged

-8-

. . . violation.'") (quoting Wainwright, 433 U.S. at 84); Douglas v. United States, 13 F.3d 43, 46 (2d Cir. 1993) (same).

In addition, a defendant may waive his right to appeal or collaterally attack a sentence within an agreed-upon Guidelines range, and the Second Circuit has held that such a waiver is generally enforceable. See United States v. Fisher, 232 F.3d 301, 303 (2d Cir. 2000); United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000); United States v. Garcia, 166 F.3d 519, 521 (2d Cir. 1999); United States v. Difeaux, 163 F.3d 725, 728 (2d Cir. 1998); United States v. Djelevic, 161 F.3d 104, 106-07 (2d Cir. 1998); United States v. Maher, 108 F.3d 1513, 1531 (2d Cir. 1997); United States v. Ready, 82 F.3d 551, 555-56 (2d Cir. 1996); United States v. Yemitan, 70 F.3d 746, 747 (2d Cir. 1995); United States v. Stevens, 66 F.3d 431, 436-37 (2d Cir. 1995); United States v. Jacobson, 15 F.3d 19, 22 (2d Cir. 1994); United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993) (per curiam); United States v. Rivera, 971 F.2d 876, 896 (2d Cir. 1992).

As the Second Circuit stated in Salcido-Contreras:

> In no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless.

Id., 990 F.2d at 53 (dismissing appeal of a sentence within stipulated Guidelines range).

Although such waivers are not absolute in scope, the circumstances under which the Second Circuit will decline to enforce a waiver are very limited. See Gomez-Perez, 215 F.3d at 319. These exceptions include situations "when the waiver was not made knowingly, voluntarily and competently, when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, when the government breached the plea agreement, or when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus

amounting to an abdication of judicial responsibility subject to mandamus." Id. (collecting cases) (citations and quotation marks omitted); see United States v. Rosa, 123 F.3d 94, 97 (2d Cir. 1997) (holding that rule bars "even those appeals which claim that the sentencing court illegally sentenced the defendant under the Guidelines and relevant statutes, so long as the court nevertheless imposed a sentence within the range outlined in the agreement"); see also United States v. Fisher, 232 F.3d at 303 (enforcing appeal waiver against claim that sentencing judge misapplied Guidelines in calculating loss amount in bank embezzlement case); United States v. Djelevic, 161 F.3d at 107 (enforcing appeal waiver despite claim that counsel was ineffective at sentencing by failing to raise certain Guidelines arguments).

Similarly, the rule of procedural default can be overcome in a habeas case only in narrow circumstances. One such circumstance is where the petitioner shows that his counsel's performance was constitutionally ineffective. See Murray v. Carrier, 477 U.S. 478, 487-88 (1986). "To evaluate a claim that a guilty plea was involuntary or unknowing due to ineffective assistance of counsel, [courts] use the familiar framework established in Strickland v. Washington, 466 U.S. 668 (1984)." United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001) (parallel citations omitted).

"A defendant must first establish that 'counsel's representation fell below an objective standard of reasonableness.'" Id. (quoting Strickland, 466 U.S. at 688). With respect to guilty pleas, the Second Circuit has held that the ABA guidelines simply require "[a] defense lawyer in a criminal case . . . to advise his client fully on whether a particular plea to a charge appears to be desirable." Boria v. Keane, 99 F.3d 492, 496 (2d Cir. 1996) (quoting Model Code of Professional Responsibility, Ethical Consideration 7-7 (1992)) (emphasis deleted). "[C]ounsel must communicate to the defendant the terms of the plea offer and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most

likely be exposed." Purdy v. United States, 208 F.3d 41, 44 (2d Cir. 2000) (citations omitted). Not every mistake or omission of defense counsel amounts to a violation of the Sixth Amendment right to counsel. Rather, the defendant bears the burden of rebutting the strong presumption that an attorney's performance falls within the "'wide range of reasonable professional assistance.'" Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 688). The presumption in favor of counsel's effectiveness is especially strong in the context of guilty pleas where, as here, the petitioner has openly admitted his guilt before the Court. See Hill v. Lockhart, 474 U.S. 52, 58 (1985).

"Second, the defendant must show that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Hernandez, 242 F.3d at 112 (quoting Lockhart, 474 U.S. at 59); cf. United States v. Dominguez-Benitez, 124 S. Ct. 2333, 2339 (2004) (adopting same standard for evaluating prejudice as to claimed Rule 11 violations). "This second, or 'prejudice,' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Lockhart, 474 U.S. at 59.

In the end, habeas relief is an extraordinary remedy that should only be granted where it is necessary to redress errors which, were they left intact, would "inherently result in a complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428 (1962). The strictness of this standard embodies the recognition that collateral attack upon criminal convictions is "in tension with society's strong interest in [their] finality." Ciak, 59 F.3d at 301.

**B.    The Petitioner's Ineffective Assistance of Counsel Claim Has No Merit**

The petitioner claims that he received ineffective assistance of counsel in two respects. First, he claims that his counsel failed to investigate adequately his case by being unable to locate a

potential witness. Second, he claims that he was improperly pressured to plead guilty. Both claims fail.

The petitioner's first claim, that his trial counsel failed to locate a witness, is subject both to the procedural default rules governing habeas petitions and the waiver provision of his plea agreement. At the time of his guilty plea, the petitioner was well-aware of the witness whom he now says should have been located on his behalf. Nevertheless, he decided plead guilty, forgo any and all rights to challenge the resulting conviction and waive any right to challenge his sentence on direct appeal or through a habeas petition. His failure to raise this claim on direct appeal and his plea canvass waiver of any right to collateral review completely bar him from now complaining that his trial counsel was ineffective for failing to locate a witness.

Even on its merits, however, the claim fails. The petitioner's sworn answers during his plea canvass undercut any claim that he was unhappy with his attorney's investigation of his case or that he was pleading guilty because his lawyer had been unable to locate a witness. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) (stating that petitioner's sworn statements in open court that he understands consequences guilty plea, combined with his signed plea agreement, create "formidable barrier" to collateral relief which cannot be overcome by petitioner's unsupported allegations of attorney incompetence). Indeed, the petitioner affirmed several times that he was happy with the assistance he had received from his attorney and that he was pleading guilty because he was, in fact, guilty.

Moreover, even if the petitioner were able to establish that his counsel's performance was deficient for failing to locate a witness, he would be unable to satisfy the second, prejudice prong. To do so, the petitioner would have to show that, had this witness been located prior to trial, he would not have entered a guilty plea. "[W]here the alleged error of counsel is a failure to investigate

-12-

or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." Lockhart, 474 U.S. at 59-60. "This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." Id. Here, the petitioner has not explained the significance of this missing witness or shown how his potential testimony would have undercut the evidence of his guilt at trial. Indeed, during the plea canvass, the Government reviewed all of the facts that it would have presented during its case-in-chief, and the petitioner indicated that he agreed with the factual recitation. The petitioner, thus, made an informed decision to plead guilty, one that was clearly the product of "strategic choices made after thorough investigation of law and facts relevant to plausible options [and is therefore] virtually unchallengeable." Strickland, 466 U.S. at 690.

In addressing claim of ineffective assistance in connection with a guilty plea, it is also appropriate to consider the petitioner's likelihood of success at trial, and the significant risk that a conviction after trial will result in a longer term of incarceration. See Panuccio v. Kelly, 927 F.2d 106, 108-09 (2d Cir. 1991). Here, by pleading guilty, the petitioner acknowledged that his act alone of threatening Lydia Ramirez with the charged firearm as she attempted to call the police established his guilt of the § 922(g)(1) offense. He also recognized that the written plea agreement gave him significant benefits, including the Government's willingness to suggest a sentence at the bottom of the guideline range and to recommend a full three points for acceptance of responsibility, despite the fact that the plea itself occurred on the eve of jury selection.

Unlike the petitioner's first claim of ineffectiveness, his second claim is one of the few that is not subject to the waiver provision in his plea agreement because he asserts that his trial counsel

coerced him into pleading guilty by telling him that he would face a longer prison term if he was convicted after trial. Such a claim, by attacking the voluntariness of the plea, attacks the voluntariness of the collateral review waiver. Still, like the first claim, this claim collapses under the weight of the petitioner's sworn answers at the time of the guilty plea.

During the plea canvass, the Court specifically asked the petitioner, "Has anyone made any threats against you or is anyone in any way forcing or otherwise coercing you to plead guilty or to waive your right to appeal?" and the petitioner responded, "No, Your Honor." T.8/13/03 at 21. The Court also informed the petitioner that it "was not bound by any explanation or recommendation made by your attorney or by the government" as to the appropriate sentence, and consulted with defense counsel to make sure that he had informed the petitioner that the Court was not bound by the plea agreement or any recommendation as to the Guideline determination. See id. at 24. Finally, the Court asked the petitioner several different questions to make sure that he was entering into the plea and the plea agreement knowingly and voluntarily, that he was pleading guilty because he was, in fact, guilty, and that he agreed and admitted to facts which satisfied the three elements of the offense charged. There is absolutely no evidence, based on the petitioner's sworn answers during the plea colloquy, that his decision to plead guilty was anything other than his own, knowing and voluntary decision.

### C. The Petitioner Has Not Set Forth A Factual Basis For His Claim That This Court Used A Prejudicial Statement Against Him At A March 26, 2003 Hearing Regarding His Motion For Substitute Counsel

The petitioner next claims, without further explanation, that the Court "used a prejudicial statement against [him] during the March 26, 2003 Substitute Counsel Pro-Se hearing which influenced [him] to plead guilty." This claim should be rejected because the petitioner has failed to articulate it. He has not indicated what statement was made by the Court or explained how the

-14-

statement affected his decision to plead guilty. The only record before the Court is the fact that the Court granted the petitioner's request for substitute counsel on or about April 14, 2003. The transcript of that hearing has not been produced, and the petitioner has not indicated what statements were made during the hearing which supposedly affected his decision to plead guilty in August, 2003. Moreover, the transcript of the guilty plea canvass indicates quite clearly that the petitioner had decided to plead guilty voluntarily and without threat or coercion. The petitioner was specifically asked whether any outside factors had motivated his decision to plead guilty, and he answered, under oath, that he was pleading guilty of his own free will and based solely on the promises set forth in the written plea agreement.

> D. **The Petitioner Has Waived Any Claim That His Sentencing Guidelines Were Improperly Calculated Or That He Was Not An Armed Career Criminal**

The petitioner appears to raise three additional claims related to his sentencing. First, he argues that the Pre-Sentence Report ("PSR") improperly attributed one point for a prior conviction for Possession of a Class A Substance. Second, he claims that the PSR incorrectly applied a four-level enhancement under U.S.S.G. § 2K2.1(b)(5) for his alleged use of the firearm in connection with another felony offense. Third, he maintains that his prior convictions for breaking and entering a railroad car and possession of burglarious tools were not "crimes of violence" under U.S.S.G. § 4B1.4.

All three sentencing claims can be rejected under the waiver provision of the petitioner's written plea agreement. In that provision, the petitioner knowingly and voluntarily waived any right to collaterally attack his sentence if the incarceration term ordered by the Court was 210 months or lower. The petitioner was sentenced to 210 months' incarceration. He, therefore, has waived any claim on collateral review of the type that he raises here, i.e., any challenge to the computation

underlying the determination of his sentencing guideline range or any challenge to the determination of his status as an armed career criminal under § 924(e) and U.S.S.G. § 4B1.4.

These claims can likewise be rejected because they are procedurally barred. The petitioner did not raise these claims on direct appeal and has failed to show cause for such failure. It is well-settled that claims which do not address the effectiveness of counsel and which have not been raised on direct appeal, cannot be subsequently raised on collateral review unless the petitioner satisfies the cause and prejudice standard. See Ciak, 59 F.3d at 302.

Finally, each claim can be rejected on its merits. First, the PSR properly attributed one point for the petitioner's prior conviction for possession of a class A substance because the petitioner had been sentenced to pay a $625.00 fine in that case, and such sentence was imposed on February 25, 1994, which was within ten years of the sentencing date in this case. See U.S.S.G. §§ 4A1.1(c) and 4A1.2(e)(2). The petitioner is incorrect in his assertion that only "prior sentence[s] of imprisonment" receive criminal history points; any "prior sentence" can receive criminal history points. "Prior sentence" is defined as "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1). Moreover, to the extent that the PSR erred in its attribution of one criminal history point for this prior conviction, such error could not have prejudiced the petitioner. The PSR attributes a total of 17 criminal history points to the petitioner; therefore, he would have remained in Criminal History Category VI even without the extra point from this 1994 conviction.

Second, the petitioner is incorrect in his assertion that the Court applied a four level enhancement for possession of a firearm in connection with another felony offense. The Court explicitly refused to apply that enhancement. Specifically, the Court ruled as follows:

[T]he defendant objects to a four-level increase pursuant to Guideline Section [2]K2.1(b)(5)

based on the use or possession of a firearm in connection with another felony, namely, risk of injury to a minor. And I refer to Connecticut General Statute Section 53-21. After a review of Connecticut General Statute Section 53-21 and State vs. Lemoine, 39 Conn. App. 657, it's a 1995 case, the Court concludes that the record here does not support such a four-level increase.

Third, the Court properly concluded that the petitioner was an armed career criminal. The petitioner claims that his prior convictions for Breaking and Entering a Railroad Car and Possession of Burglarious Tools do not have an element of violence, as he claims is required under U.S.S.G. § 4B1.4. Section 4B1.4, however, specifically defers to 18 U.S.C. § 924(e) and states that any defendant "who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal." U.S.S.G. § 4B1.4(a). Thus, the language of § 924(e) controls. According to that language, the term "violent felony" refers to, inter alia, any prior felony conviction for "burglary." 18 U.S.C. § 924(e)(2)(B)(ii). It was proper, therefore, for the petitioner to stipulate, and for the Court to conclude, that the petitioner's prior convictions for Breaking and Entering a Railroad Car and Possession of Burglarious Tools together counted as one prior "violent felony" conviction under § 924(e).[2]

Moreover, even if the Court's determination was incorrect, the petitioner has failed to show how such error prejudiced him. The petitioner stipulated during his plea canvass and does not dispute here that he sustained four other convictions which qualify him as an armed career criminal under 18 U.S.C. § 924(e), including three separate felony assault convictions. Thus, even if the Court incorrectly counted the convictions challenged here, such an error would not change the petitioner's status as an armed career criminal and his resulting guideline range.

---

[2]Because these two convictions resulted from the same arrest, they could not be considered as two separate convictions under § 924(e) (indicating that the three prior felony convictions must have been "committed on occasions different from one another").

-17-

-18-

## III.    CONCLUSION

For the foregoing reasons, the Court should dismiss the petitioner's habeas petition in its entirety.

                              Respectfully submitted,

                              KEVIN J. O'CONNOR
                              UNITED STATES ATTORNEY

By: _____
      JOHN A. DANAHER III
      ASSISTANT UNITED STATES ATTORNEY
      Federal Bar No. ct05101

For: ROBERT M. SPECTOR
      ASSISTANT U.S. ATTORNEY
      Federal Bar No. CT18082
      157 Church Street, 23rd Floor
      New Haven, CT  06510
      Tel.: (203) 821-3700

CERTIFICATE OF SERVICE

  This is to certify that on December 6, 2004, a copy of the foregoing was mailed, postage prepaid, to:

Edward Roque, pro-se
Inmate Number 14989-014
FCI Otisville
P.O. Box 600
Otisville, NY 10963

        By: _____
           JOHN A. DANAHER III
           Assistant United States Attorney

        For: ROBERT M. SPECTOR
           Assistant United States Attorney