UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EDWARD ROQUE, | CRIMINAL NO. 3:02CR353(AWT) |
| Petitioner: | CIVIL No. 3:04CV1654(AWT) |
| v. | |
| UNITED STATES OF AMERICA, | |
| Respondent: | |

PETITIONER REQUESTS LEAVE OF THIS HONORABLE COURT
TO TRAVERSE BY REPLY TO THE GOVERNMENT'S RESPONSE TO
ROQUE'S PETITION UNDER 28 U.S.C. § 2255 TO VACATE,
SET ASIDE, OR CORRECT SENTENCE

COMES NOW, the Petitioner, Edward Roque, pro-se, (Hereinafter, "Petitioner") in the above captioned proceedings and states as follows:

(1). The Government is correct, in that, I did not appeal my conviction, however, I am now moving on collateral review to vacate my sentence; especially relating to five claims, as more fully clarified below:

(a). The instant Petitioner's conviction was unlawfully induced or not made voluntarily or with understanding of the nature of the charge(s) and the consequences of the plea of guilty expressly due to the ineffective assistance of his [trial] counsel who failed to conduct and independent factual and legal investigation of the merits of the Government's case-in-chief; and likewise improperly coersed and pressured him to plead guilty in violation of Petitioner's Sixth Amendment right to the effective assistance of counsel within the meaning of **Strickland;** Johnson v. United States, 313 F.3d 815 (2nd Cir. 2002) (per curiam) (ineffective assistance of counsel claim not procedurally defaulted by failure to raise it on direct appeal.)

7004 2510 0003 2084 7874

<u>Ground One's Legal Analysis [Argument]</u>

<u>Federal Rule of Criminal Procedure 11</u>

The "clearly established law of the land as determined by the Supreme Court of the United States of America's Federal Law" that governs the acceptance of a guilty plea under Federal Rule of Criminal Procedure 11 is well settled:

> "[A] plea "cannot be truly voluntary unless the [Petitioner] possesses an understanding of the law in relation to the facts"

See, <u>McCarthy v. United States</u>, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969). See also, <u>United States v. Broce</u>, 488 U.S. 563, 570, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989), (which stated in pertinent part as follows:)

> "[I]n holding that the admissions inherent in a guilty plea "go only to the acts constituting the ... the Court ... misapprehended the nature and effect of the plea. A guilty plea 'is more than a confession which admits that the accused did various acts.'"

<u>Boykin v. Alabama</u>, 395 U.S. 238, 242, 23 L.Ed.2d 274, 89 S.Ct. 1709 (1969).

> "It is an admission that he committed the crime charged against him."

<u>North Carolina v. Alford</u>, 400 U.S. 25, 32, 27 L.Ed.2d 162, 91 S.Ct. 160, 56 Ohio Ops.2d 85 (1970).

> "By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime. That is why the defendant must be instructed in open court on "the nature of the charge to which the plea is offered."

**Federal Rule of Criminal Procedure 11(c)(1).**

> "... and why the plea "cannot be truly voluntary
> unless the defendant truly possesses an understand-
> ing of the law in relation to the facts."

McCarthy v. United States, 394 U.S. 459, 466, 22 L.Ed.2d 418, 89 S.Ct. 1166 (1969).

On certiorari, the Supreme Court of the United States reversed and remanded. In an opinion by **WARREN, Ch. J.**, expressing the view of eight members of the Court, it was held that (1) under Rule 11, the trial judge must personally inquire whether the defendant understood the nature of the charge against him, the Rule being designed to assist the district judge in making the constitutionally required determination that the guilty plea was truly voluntary, and to produce a complete record at the time of the plea of the factors relevant to such voluntariness determination, (2) any noncompliance with the Rule constituted reversible error, entitling the defendant to plead anew, and (3) the decision was made pursuant to the Supreme court's supervisory power over the lower federal courts.

### The Due Process Clause

A defendant who enters such a plea [as the Petitioner has previously done has] simultaneously waiv[ed] several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. **Machibroda v. United States**, 368 U.S. 487, 493, 7 L.Ed.2d 473, 477, 82 S.Ct. 510 (1962); Von Moltke v. Gillies, 332 U.S. 708, 92 L.Ed. 309, 68 S.Ct. 316 (1948); Waley v. Johnston, 316 U.S. 101, 86 L.Ed. 1302, 62 S.Ct. 964 (1942). But see, Guerro v. United States, 186 F.3d 275, 277 (2d Cir. 1999) (claim of per se ineffective assistance of counsel allowed under § 2255).

(b). This Court improperly relied on a statement made by the Petitioner at a March 26, 2003, hearing on a motion for substitute counsel which was a violation of his privilege against self-incrimination under the Fifth Amendment's Due Process Clause and/or the Fourteenth Amendment's Due Process Clause.

(c). One of the Petitioner's prior convictions was improperly counted for Criminal History Points.

(d). The Court improperly applied a four-level Guidelines enhancement under U.S.S.G. § 2K2.1(b)(5).

(e). The Petitioner was not an Armed Career Criminal under Title 18 U.S.C. § 924(e) because one of his qualifying convictions was a property crime that did not involve violence to another person.1/

---

1/ The Petitioner's alleged assault upon a Correctional Officer cannot be said to have involved a weapon for the purposes of his being subjected to the Armed Career Criminal enhanced penalties. Nor can any one of the Petitioner's alleged assaults of a police officer be said to have involved any weapon that would later subject him to the penalties of an Armed Career Criminal pursuant to Title 18 U.S.C. § 924(e). Specifically, during the instant offense, the Petitioner did not pull out and/or brandish any gun whatsoever in the presence of the two police officers (e.g., Sgt. Burns and Sgt. Straubel) rather he ran and was apprehended after a brief chase. It was alleged that during the chase that the Petitioner was seen by Sgt. Straubel discarding the firearm, which was found underneath a car, photographed in place, **although no fingerprint evidence, which could conceivabley excluded the Petitioner as the culprit was ever proffered by the Government and/or offered by the Petitioner's defense counsel due to the ineffective assistance and deficient performance counsel provided Petitioner.**

See, <u>Glover v. United States</u>, 531 U.S. 198, 203-04 (2001) (where defendant's counsel's alleged error at sentencing phase, which resulted in sentence increase of 6 to 21 months for defendant could be sufficiently prejudicial to constitute ineffective assistance, provided counsel's performance was unreasonable).

"Clearly Established Federal Law As Determined

<u>By The Supreme Court of The United States</u>"

Indeed, this Honorable Court needs look no further than the case of <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) in making this determination. In announcing the objective reasonableness standard, the <u>Strickland</u> Court identified "certain basic duties" that its precedents and then-existing professional norms established criminal defense attorneys must carry out to perform competently within the meaning of <u>Strickland's</u> holding [pursuant to the Sixth Amendment]:

> "[T]he Court included among these duties "counsel's obligation to function as assistant to defendant ... and the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution."

<u>Strickland</u>, 466 U.S. at 688, 104 S.Ct. 2052 (emphasis added).

Trial/Plea Bargaining Counsel's Failure

To File A Timely And/Or Any Notice Of Appeal

Whatsoever Constituted Constitutionally-Deficient

<u>Performance</u>

Pursuant to Petitioner's Sixth Amendment right to the effective assistance of counsel within the meaning of <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and <u>Roe v. Flores-Ortega,</u> 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) Petitioner's trial/plea bargaining/sentencing counsel's failure to file a [timely and/or any] notice of appeal whatsoever constituted constitutionally-deficient performance. See, <u>Underwood v. United States</u>, 15 F.3d 16, 18 (2d Cir. 1993):

> "[R]elitigation of decided issues cognizable due to existence of intervening change in law or issues not raised on Direct Appeal due to ineffective assistance of counsel."

Likewise, see <u>United States v. Gordon</u>, 156 F.3d 376, 380 (2d Cir. 1998) where it was held that:

> "[C]ounsel's gross underestimation of defendant's sentencing exposure in letter to defendant fell below previaling professional norms and was ineffective assistance."

Also see, <u>Pavel v. Hollins</u>, 261 F.3d 210, 228 (2d Cir. 2001) where it was stated in pertinent part as follows:

> "[C]ounsel's failure to prepare a defense, call important fact witnesses, and call medical <u>expert</u> (emphasis added by instant Petitioner] amounted to deficient performance," 'because testimony of those witnesses would have rebuted prosecution's already weak case'"

### Petitioner's Unknowing, Involuntary, and Unintelligent Waiver of His Collateral Attack Rights Via 28 U.S.C. § 2255 Motion Does Not Foreclose In Certain Issues of Due Process

See generally, <u>Frederick v. Warden</u>, 308 F.3d 192, 195 (2d Cir. 2002) which held that: "[W]aiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver was procured."

### It Violated Petitioner's Sixth Amendment Rights to Have a Judge Impose Statutory Maximum/Guideline Range as Armed Career Criminal Absent a Jury Finding of Three Previous Violent Felony Convictions

If the Petitioner's sentence was not enhanced pursuant to § 924(e)(1), the applicable statutory maximum would have been ten years, 18 U.S.C. § 924(a)(2), and the Guideline range would have been 63 to 78 months. Therefore, the application of 18 U.S.C. § 924(e)(1) increased the Petitioner's minimum sentence from as little as 63 months to 180 to 210 months. No jury finding exists to support such an enhanced sentence, see, **United States v. Booker**, ___ U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005); and the Petitioner's admission(s) were unlawfully induced or not made voluntarily or with understanding of the nature of the charge(s) and the consequences of the plea.

The Government ignores the rationale of **Booker**. Although **Booker's** precise holding is limited to the guidelines, the rationale expressed in **Booker** and previously enunciated in **Blakely v. Washington**, 542 U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), clearly stands for the constitutional principle that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted [voluntarily] by the defendant or proved to a jury beyond a reasonable doubt." **Booker**, 125 S.Ct. at 755.

In the [former] mandatory sentencing scheme's regime, where a judge ha[d] no discretion in his application of the law to determine a particular sentence, it [was] constitutionally irrelevant

whether the [formerly] mandatory sentence was enacted by Congress in the form of a [defective] statute or promulgated by the Sentencing Commission in the form of a [previously] binding Guideline. **Id. at 751.**

As explained in **Booker**, the Supreme Court stated, "[r]egardless of whether Congress or a Sentencing commission concluded that a particular fact must be proved in order to sentence a defendant with a particular range, the Framers would not have thought it too much to demand that, before depriving a man of [ten] more years of his liberty, the State should suffer the modest inconvenience of submitting its accusation to the unanimous sufferage of twelve of his equals and neighbors, rather than a lone employee of the State." **Id.** quoting **Blakely**, 542 U.S. at ___, 124 S.Ct. at 2543 (internal quotations omitted).

Consequently, the issue is whether under the rationale of **Booker** and **Blakely** the Petitioner had a constitutional right to require the Government to prove beyond a reasonable doubt to the satisfaction of a unanimous jury that he previously had been convicted of three violet felonies, or whether, as the Governement would urge, it is constitutionally sufficient for the judge to find those facts by a mere preponderence of the evidence? See, **Taylor v. United States**, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) and **United States v. Rucker**, 171 F.3d 1359 (11th Cir. 1999); **United States v. Greer**, 359 F.Supp.2d 1376 (M.D.Ga. 2005).

<u>Armed Career Criminal</u>

The Guideline applicable to Petitioner's conviction was Section 2K2.1 (Unlawful Possession of a Firearm). However, the Court then erroneously applied Section 2A2.2 (aggravated assault) by way of a cross-reference in Section 2K2.1 (See, U.S.S.G. §§ 2K2.1(c)(2) and 2X1.1(c)(1)):

> "[U]nfortunately, I have concluded [via a preponderance of the evidence standard] that you [Roque] have no concern for the safety of others and no respect for their property and no respect for the law....
>
> I have also concluded [via a preponderance of the evidence standard] that not only do you lack respect for law enforcement officers but that you are not even deterred from misconduct by virtue of their presence on the scene...
>
> You have assaulted a correctional officer. You have a pattern of assaulting police officers. You have an extensive history of criminal conduct...
>
> While your lawyer points out that use of drugs has been a contributing factor in your criminal history, I must say that I have numerous defendants who have drug problems who have not assaulted anyone...
>
> And I cannot think of more than one or two who have drug problems who have assaulted a police officer in connection with any offense. And I cannot think of any that have a pattern of assault on law enforcement officers the way that you do...
>
> All of this leads me to conclude that you are a serious threat to the community and that society needs to be protected from you as long as possible, and I have no confidence that you can be deterred from committing crimes in the future."

Petitioner's case is analogous to that of the defendant in **United States v. Tavares**, 93 F.3d 10, 13 (1st Cir. 1996), where like the defendant in **Tavares**, at sentencing Petitioner urged his counsel to protest that there was insufficient record support for either a finding that Petitioner had the requisite intent to do bodily harm or a finding that serious bodily injury had resulted.

Instead, Petitioner states that the evidence showed that he had merely meant to frighten his victim(s).

Petitioner asserts that the real question presented here is whether his previous felony convictions could reasonably be counted as predicate convictions under the Armed Career Criminal Act ("ACCA"). See, 18 U.S.C. § 924(e). Petitioner contends that the answer is "negative," and these dispositions could not be counted as convictions under the ACCA, because not the instant assault nor any of the previously admitted to felony convictions fitted the **aggravated assault guideline as structured:**

> "[I]n effect, the guideline provides two separate opportunities for [a] court to give effect to a finding of serious bodily injury."

See, <u>United States v. Newman</u>, 982 F.2d 665, 673-75 (1st Cir. 1992) (double counting of victim's serious bodily injury permissible under Section 2A2.2), **cert. denied,** 510 U.S. 812, 114 S.Ct. 59, 126 L.Ed.2d 28 (1993).

The Guidelines define aggravated assault as a felonious assault involving;

(a) a dangerous weapon with intent to do bodily harm (i.e., not merely to frighten), or

(b) serious bodily injury, or

(c) an intent to commit another felony.

U.S.S.G. § 2A2.2, **comment. (n.1).** Serious bodily injury, in turn, **is defined as:**

[(i)] injury involving extreme pain or the impairment of a function of a bodily member, organ or mental faculty; or

[(ii)] requiring medical intervention such as surgery, hospitalization, or physical rehabilitation.

**WHEREFORE**, since this Court did not find on the record before it that the brandishing of the gun itself was done with the "intent to do bodily harm" absent such a finding, the Court's aggravated assault determination via a preponderance of the evidence standard could not be premised on any applicable Guideline, nor cross-referenced either. This **Winship/Apprendi/Blakely/Booker** error is of the structural "plain error" variety and, thus is not amenable to the harmless error analysis. Petitioner claims herein that his criminal record was not egregious and serious and that the sentencing court erred in determining so by a preponderance of the evidence. U.S.S.G. § 4A1.3, p.s.; see also **United States v. Doe**, 18 F.3d 41, 48-49 (1st Cir. 1994); **United States v. Mendez-Colon**, 15 F.3d 188, 190 (1st Cir. 1994).

Dated: 5/27/05

Respectfully submitted,

*Edward Roque*

EDWARD ROQUE
Pro-Se Litigant
Fed. Reg. No. 14989-014
USP-Lewisburg
R.D. # 5, William Penn Road
P. O. Box 1000
Lewisburg, Pennsylvania 17837-1000

PETITIONER'S EXHIBIT [AFFIDAVIT IN SUPPORT]

## AFFIDAVIT

COMES NOW, the Petitioner, Edward Roque, and hereby depose and states the following under the penalty of perjury:

1). Upon being appointed, Mr. David A. Moraghan, Esquire, by the District Court of Hartford, Connecticut or or about May, 2003, I, the Petitioner, Edward Roque, apprised him of the fact that I had a defense witness who had and would provide substantial mitigating testimony at trial that would very much impeach the Government's witnesses and prove that their police statement (e.g., the arresting police officer's statement) which I contended was fabricated to cover up what, in fact, had actually happened the night of my arrest on October 25, 2002.

2). Likewise, I informed Mr. Moraghan that my defense witness could be found at the location of and interviewed at the Correctional Facility of Corrighan at Uuncasville, Conneticut where I was being housed at that time. Likewise, I also provided this defense witness's identification number (e.g., jail ID #) to him as well.

3). I also notified him that my previously appointed counsel, Mr. Dennis Thomas, Esquire, had his own Federal Investigator, (i.e., Ms. Beauloseil) come out and interview, Mr. Oyola, on one or two occasions during the time that I myself was still being held at the Correctional Facility of Corrighan.

4). Mr. Moraghan was also made aware that I came in contact with defense witness, Mr. Oyola, during a transfer for a court appearance at the Bridgeport, Connecticut State Court and that upon me notifying, Mr. Oyola about the incident I was incarcerated for and my providing him with the police statements of my arrest,

Mr. Oyola in return confirmed to me that he was in the vicinity and had at one time came into the Liquor store to purchase beer and had observed me (Edward Roque) and Mr. Nelson Ortiz conversating and selling Key Chains at the front of the Liquor store where Berkshire and East Main Stree intercedes.

5). Upon being informed by Mr. Oyola that he had observed me and Nelson Ortiz together, I informed Mr. Moraghan that Mr. Oyola had additionally informed me that he had witnessed, Ms. Nydia Ramirez, tell the police that Nelson Ortiz was with me and that when Nelson Ortiz was apparently going to be arrested for what could have been conspiracy for the charges I was arrested for, Mr. Nelson Ortiz's brother, Mr. Geraldo Ortiz, who is a police officer working for the Bridgeport Police Department and apparently was working the night of my arrest, intervened and had Nelson Ortiz released by the police officers that were in the process of placing him under arrest.

6). Mr. Moraghan's response to the above information was that he would conduct an investigation of the matter of my witness's exculpatory information, and as well promptly request funds from the Court to hire an investigator that would be required to come and see me for information related to the night of my arrest.

7). Upon my providing the above referenced information to my defense counsel, Mr. Moraghan, I assured myself that he would interview my defense witness, and he himself confirmed that he would, but that first he had to request permission from the Court to do so.

8). On June, 2003, Mr. David A. Moraghan, Esquire, came to the correctional facility of Corrighan with a hired investigator to seek information about the night of my arrest and notified me that he had gone to the Connecticut Department of Corrections Web Site and could not locate Mr. Oyola's name nor his jail identification number.

9). I informed Mr. Moraghan that there was no possible way that Mr. Oyola had been transferred out of the State of Connecticut's Department of Corrections because he had just received 18 months of incarceration the same day we'd met and that Federal Investigator, Ms. Beauloseil had just recently interviewed him at the Corrighan Correctional Facility while I was still being held there.

10). Mr. Moraghan confirmed nevertheless that he could not locate him, but insisted that he would inform the Court and would also file motions that would likewise inform the court about sentimental relationship values based on the facts of the night of my arrest.

11). Mr. Moragahn then departed, however, again sometime in the month of June or July, 2003, he came to see me to seek my permission for him to continue my scheduled jury selection dates because the investigator had not gotten back with him on any investigative matters.

12). I, Petitioner, Edward Roque, then raised the issue to Mr. Moraghan that I specifically wished to stand trial and likewise take the witness stand and testify in my own behalf.

13). I also then requested Mr. Moraghan to file a motion with the Court requesting that it issue a Writ of Habeas Corpus Ad Testificandum, in order to have my defense witness, Mr. Oyola brought to Court and produced as a witness for my trial proceedings. Mr. Moraghan's response to my requests was that he would see what he could do based upon my requests and/or wishes, after he'd heard the response from the court, et cetera, of the motions he'd already filed.

14). Finally, sometime in June or July, 2003, I received a letter from Mr. Moraghan that if I went to trial and lost that I would be facing a mandatory minimum of 26 years imprisonment upon my conviction and sentencing before this Honorable Court.

*Edward Rogue*

# SMITH, KEEFE, MORAGHAN & WATERFALL

*Counselors at Law*

JOSEPH F. KEEFE  
DAVID A. MORAGHAN  
A. THOMAS WATERFALL  
ELIZABETH A. KEILTY

OF COUNSEL  
JESS H. SMITH

July 21, 2003

ATTORNEY-CLIENT COMMUNICATION  
<u>OPEN ONLY IN PRESENCE OF INMATE</u>

Mr. Edward Roque  
Inmate No. 147979  
Corrigan Correctional Institution  
986 Norwich-New London Turnpike  
Uncasville, Connecticut 06832

Dear Edward:

    I do not believe we will be able to find Mr. Oyola. I ran the inmate number you provided me, 270348, through the Department of Corrections site and there is no such person or inmate number listed. I did run the last name and came up with two individuals named Benjamin Oyola, Inmate No. 173879, who is at Osborne, and Luz Oyola 212945 who is at York. I have provided John McNicholas with that information, but I do not know if we will be able to find that individual.

    On a more depressing note, we will not be able to receive the 10 year sentence. I had been pestering Mr. Spector, trying to get him to agree to a 10 year cap. He has told me that that is not possible because a committee would not allow it. We had three conversations concerning this, and the end result is that he has now filed the statutory notice concerning your criminal history. He called me to say that this should put an end to discussions as it is simply outside of his hands and if you are going to plead, it must be to the 15 year penalty.

    I did not tell him that you were willing to plead to the 15 year penalty. Our discussions prior to last week were that you wanted me to try and get a 10 year penalty, and if that was impossible, that you would enter a plea to the 15 year penalty. I just want to confirm that. I am not at this time going to seek a plea or inform Spector that you re gong to plea. I do want to see what John McNicholas turns up, but this, in connection with the lack of any fingerprints on the gun, and the interview with the 10 year old boy, does not bode well for us.

TELEPHONE: (860) 482-7651    FAX: (860) 482-7845  
P.O. BOX 1146, 179 WATER STREET, TORRINGTON, CT 06790  
e-mail@skmwlaw.com

Mr. Edward Roque
July 21, 2003
Page Two


Would you please call me, collect, late in the afternoon, when you receive this letter so that we can discuss this.

Very truly yours,

David A. Moraghan
DAM/cs

# SMITH, KEEFE, MORAGHAN & WATERFALL
*Counselors at Law*

JOSEPH F. KEEFE  
DAVID A. MORAGHAN  
A. THOMAS WATERFALL  
ELIZABETH A. KEILTY  

OF COUNSEL  
JESS H. SMITH

July 25, 2003

**ATTORNEY-CLIENT COMMUNICATION**
**OPEN ONLY IN PRESENCE OF INMATE**

Mr. Edward Roque  
Inmate No. 147979  
Corrigan Correctional Institution  
986 Norwich-New London Turnpike  
Uncasville, Connecticut 06832

Dear Mr. Roque:

    I spoke at length with Assistant United States Attorney Rob Spector concerning your case. They are not going to agree to any type of a sentence involving the 10-year mandatory minimum. It is their position that the only acceptable plea would be to the 15 years, given your record. He also told me that he had previously brought a proposal similar to ours to the Committee when you were represented by Tom Dennis and that it was rejected by the Committee in his office. As I believe I told you, when they attempt to reduce a sentence or have a plea to a lesser charge, it goes in front of a Committee in the office made up of 3 or 4 assistants, and in your case, it just wasn't going to happen.

    I believe that if you do enter a plea, we can get an agreement on the minimum 15-year sentence with no enhancements. Also, for whatever it is worth, he will agree to any type of acceptance of responsibility credit as long as the ultimate range is at the 15-year mark.

    I will be away next week. I will be down to see you on or about August 6th in the afternoon. Please think about how you want to proceed.

    Also, after I spoke to Spector, he called again. It turns out that the ATF agents found Joshua Rivera. As you know, they had been looking for him, although Darcy Beausoleil had previously found him and spoke with him. Unfortunately, he has now confirmed to the agents the account of the incident and supports Lydia Ramirez' account of what took place in the garage and that you were the individual who did this.

TELEPHONE: (860) 482-7651   FAX: (860) 482-7845
P.O. BOX 1146, 179 WATER STREET, TORRINGTON, CT 06790
e-mail@skmwlaw.com

Mr. Edward Roque
July 25, 2003
Page Two

      In all honesty, for your sake, this is not a trial case. If we go to trial, you won't get out of prison for a very, very long period of time, if at all. I think that you have resigned yourself to the 15 year sentence, and I know that that is very long. However, it is better than what the Guideline alternatives may be.

      Please think about this and I will be down to see you on or about August 6th.

      I do wish you well and I will talk to you soon.

Very truly yours,

David A. Moraghan
DAM/cs
Dictated, but not read